Adam M. Apton (State Bar No. 316506)
**LEVI & KORSINSKY LLP**
445 South Figueroa Street
Los Angeles, CA 90071
Telephone: (213) 985-7290
Facsimile: (212) 363-7171
Email: aapton@zlk.com

Mark S. Reich*
Courtney E. Maccarone*
**LEVI & KORSINSKY, LLP**
55 Broadway, 10th Floor
New York, NY 10006
Telephone: (212) 363-7500
Facsimile: (212) 363-7171
Email: mreich@zlk.com
Email: cmaccarone@zlk.com

*Attorneys for Plaintiffs*

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

|  |  |
|---|---|
| SHELBY COOPER and SAMANTHA HORTON, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>MARS, INC.,<br><br>Defendant. | Case No.<br><br>**CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

Plaintiffs Shelby Cooper and Samantha Horton (hereinafter "Plaintiffs"), individually and on behalf of themselves and all others similarly situated, bring this class action lawsuit against Defendant Mars, Inc. ("Mars" or "Defendant") based upon personal knowledge as to themselves, the investigation of their counsel, and on information and belief as to all other matters.

### NATURE OF THE ACTION

1.      This is a class action lawsuit against Defendant regarding the manufacture, distribution, and sale of its Dove Promises Deeper Dark Chocolate 70% Cacao products (collectively the "Affected Products") which contain unsafe levels of lead and cadmium (collectively, "Heavy Metals"). The marketing for and labeling of the Affected Products are silent as to the presence of elevated levels of Heavy Metals in the Affected Products. Defendant's advertising and packaging are false, misleading, and reasonably likely to deceive the public.

2.      Lead is a harmful chemical when consumed and is especially dangerous to pregnant women and children. Lead poisoning occurs when lead builds up in the body, over months or years.[1]

3.      Any amount of lead exposure can lead to serious health problems. Children younger than 6 years are especially vulnerable to even mild lead exposure, which can severely affect mental and physical development.[2] At very high levels, lead poisoning can be fatal in adults and children.[3]

4.      Cadmium is also dangerous when consumed. Cadmium can be found in cigarette smoke and a wide variety of industrial products, including batteries, pigments, metal coatings, and plastics. Cadmium is carcinogenic and exposure to

---

[1] *Lead poisoning*, MAYO CLINIC, https://www.mayoclinic.org/diseases-conditions/lead-poisoning/symptoms-causes/syc-20354717 (last visited January 12, 2023).
[2] *Id.*
[3] *Id.*

even low levels of cadmium over time may result in a toxic build-up of cadmium in the kidneys, leading to kidney disease[4] and bones damage and osteoporosis.[5]

5. A December 2022 report by Consumer Reports revealed that a selection of dark chocolate products sold to the product, including the Affected Products, contained high levels of heavy metals: specifically, cadmium and lead.[6]

6. In November of 1986, California passed the Safe Drinking Water and Toxic Enforcement Act, which came to be known by its legislative name "Prop 65." Proposition 65 requires businesses to provide warnings to Californians about significant exposures to chemicals that cause cancer, birth defects or other reproductive harm.[7] As a part of that standard, California's experts set regulatory standards for acceptable levels of exposure to toxic chemicals, referred to as the maximum allowable dose levels ("MADLs") in chemicals which are identified as causing cancer, birth defects, or reproductive harm.[8]

---

[4] Nikhil Johri, *Heavy Metal Poisoning: The Effects of Cadmium on the Kidney,* BIOMETALS (Oct. 2010) https://pubmed.ncbi.nlm.nih.gov/20354761/ (last visited Jan. 12, 2023).

[5] Agneta Akesson*, Cadmium-Induced Effects on Bone Population-Based Study of Women*, ENVIRON HEALTH PROJECT (June 2006) https://www.ncbi.nlm.nih.gov/pmc/articles/PMC1480481/ (last visited Jan. 12, 2023).

[6] Kevin Loria, *Lead and Cadmium Could Be in Your Dark Chocolate*, CONSUMER REPORTS (Dec. 15, 2022) https://www.consumerreports.org/health/food-safety/lead-and-cadmium-in-dark-chocolate-a8480295550/ (last visited January 12, 2023).

[7] *About Proposition 65*, OFFICE OF ENVIRONMENTAL HEALTH HAZARD ASSESSMENT, https://oehha.ca.gov/proposition-65/about-proposition-65 (last visited January 12, 2023).

[8] *The mysterious world of Prop 65, part 8: Acceptable risk levels*, CONSUMER PRODUCTS LAW BLOG (Feb. 19, 2015) https://www.consumerproductslawblog.com/2015/02/the-mysterious-world-of-prop-65-part-8-acceptable-risk-levels/ (last visited January 12, 2023).

CLASS ACTION COMPLAINT

7.    Consumer Reports referenced California's MADLs for lead (0.5 Micrograms) and cadmium (4.1mcg). The testing performed found that Dove's Promises Deeper Dark Chocolate 70% Cacao product contained 112% of the MADL of cadmium.[9]  The Affected Products also expose consumers to a significant amount of lead.

8.    Defendant knew or should have known that its representations and advertisements regarding the Affected Products were false and misleading and that they failed to disclose material information.  Defendant had been part of a previous Heavy Metal matter, which started in 2015 as a Proposition 65 Notice raised by watchdog group As You Sow for elevated lead and cadmium levels found in the products of multiple dark chocolate brands, including Mars,[10] and settled in 2018.[11]

9.    Consumers could not have known about the unsafe levels of lead and cadmium in the Affected Products before purchasing them without having conducted extensive and expensive scientific testing.

10.    Defendant, on the other hand, is positioned to test its products and has exclusive knowledge of the quality control testing on the Affected Products and the ingredients contained therein. For example, in 2021, Defendant's Global Food Safety Center claimed to have used an Inductively Coupled Plasma Mass Spectrometry (ICP-MS) tool to determine concentrations of metal and non-metal

---

[9] *Id.*

[10] Bridget Huber, *Warning Sounded on Heavy Metals in Chocolates*, FLORIDA CENTER FOR INVESTIGATIVE REPORTING (Feb. 11, 2015) https://fcir.org/2015/02/11/warning-sounded-on-heavy-metals-in-chocolates/ (last visited January 17, 2023).

[11] Douglas Yu, *Mars, Hershey and others settle heavy metal chocolate lawsuit*, CONFECTIONERYNEWS (Mar. 08, 2018) https://www.confectionerynews.com/Article/2018/03/08/California-Superior-Court-settles-heavy-metal-chocolate-lawsuit (last visited January 17, 2023).

elements in grains of rice.[12]  In a self-published article, Defendant noted the ICP-MS's ability to detect "heavy metal contamination[.]"

11.    If Plaintiffs knew that the Affected Products contained the Heavy Metals, they would not have purchased the Affected Products on the same terms, if at all.

12.    Plaintiffs and those similarly situated purchasers ("Class Members") relied on Defendant's misrepresentations and omissions that the Affected Products contained only those ingredients listed on the Affected Products packaging and labeling.

13.    Plaintiffs and Class Members paid a premium for the Affected Products based upon Defendant's marketing and advertising campaign. Given that Plaintiffs and Class Members paid a premium for the Affected Products based on Defendant's misrepresentations and omissions, Plaintiffs and Class Members suffered an injury in the amount of the premium paid.

14.    Defendant's conduct violated and continues to violate, inter alia, California's Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200 *et seq*.; California's False Advertising Law, Cal. Bus. & Prof. Code §§ 17500 *et seq*.; California's Consumer Legal Remedies Act, Cal. Civ. Code §§ 1761 *et seq*. and Ohio's Consumer Sales Protection Act, Ohio Revised Code §§ 1345.01 *et seq*. Defendant also breached and continues to breach its warranties regarding the Affected Products and has been and continues to be unjustly enriched. Accordingly, Plaintiffs bring this action against Defendant on behalf of themselves and Class Members who purchased the Affected Products during the applicable statute of limitations period (the "Class Period").

---

[12] *Building International Collaboration Mechanisms to Focus on global Food Safety*, MARS GLOBAL FOOD SAFETY CENTER (Apr. 9, 2021 https://gfsc.mars.com/home-page-foodintegrity-capability-building/building-international-collaboration-mechanisms-focus (last visited January 17, 2023).

## JURISDICTION AND VENUE

15.     This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332(d) because there are more than 100 Class members; the aggregate amount in controversy exceeds $5,000,000.00, exclusive of interest, fees, and costs; and at least one Class member is a citizen of a state different from the Defendant.

16.     This Court has personal jurisdiction over Defendant because Defendant conducts significant business in California such that it has purposefully availed itself of the privilege of doing business in California.

17.     Venue is proper in this District pursuant to 28 U.S.C. § 1391 because a Defendant transacts significant business within this District, one Plaintiff resides within this District, and a substantial part of the events giving rise to Plaintiffs' claims took place within this District.

## PARTIES

18.     Plaintiff Shelby Cooper is a resident of the state of California. Plaintiff Cooper purchased the Affected Products during the Class Period from a Walmart retail store located in Riverside, California. Prior to purchasing the Affected Products, Plaintiff Cooper read the Affected Products' labels and purchased the Affected Products in reliance on Defendant's representation that the Affected Products contained only the ingredients listed on the Affected Products' packaging and were safe for consumption. Plaintiff Cooper believed that the Affected Products that were advertised as dark chocolate did not contain lead and cadmium.  If Mars remedied the issues identified in this complaint, Plaintiff Cooper would resume purchasing the Affected Products.

19.     Plaintiff Samantha Horton is a resident of the state of Ohio. Plaintiff Horton purchased the Affected Products during the Class Period from a Rite Aid retail store located in Canton, Ohio.  She also purchased the Affected Products from Amazon.com. Prior to purchasing the Affected Products, Plaintiff Horton read the

CLASS ACTION COMPLAINT

Affected Products' labels and purchased the Affected Products in reliance on Defendant's representation that the Affected Products contained only the ingredients listed on the Affected Products' packaging and were safe for consumption. Plaintiff Horton believed that the Affected Products that were advertised as dark chocolate did not contain lead and cadmium.  If Mars remedied the issues identified in this complaint, Plaintiff Horton would resume purchasing the Affected Products.

20.     Defendant Mars, Inc. is incorporated in the state of Delaware.  It is headquartered in McLean, Virginia.  As part of its broader business, Defendant manufactures, advertises, labels, and sells dark chocolate, including the Affected Products, throughout the United States. Defendant created or authorized the creation and dissemination of the deceptive advertisements, packaging, and labeling associated with the Affected Products.

## FACTUAL ALLEGATIONS

21.     Consumers must and do rely on Defendant to truthfully and honestly report what their Affected Products contain on their packaging or labels. Companies, including Mars as alleged herein, profit from consumers' search for safe and healthy products.  Consumers will, and do, pay premiums for safe and healthy products.

22.     While the advertising and marketing for the Affected Products is silent as to the presence of cadmium and lead present in the Affected Products, public reports and articles recently revealed that Defendant's Affected Products contain lead and cadmium. The level of cadmium observed exceeded the MADL for established by California; posing serious health risks.

23.     Lead and cadmium, which are both present in the Affected Products, are heavy metals and their presence in food, alone or combined, poses a serious safety risk to consumers because they can cause cancer and other serious problems

CLASS ACTION COMPLAINT

(often irreversible) such as damage to brain development, the liver, kidneys, and bones.[13]

24.     California recognized that lead and cadmium as "known to the state to cause cancer or reproductive toxicity . . ." after the state's qualified experts formed the opinion that both lead[14] and cadmium[15] were "shown through scientifically valid testing according to generally accepted principles to cause cancer or reproductive toxicity."[16]

25.     The harmful effects of lead have been studied extensively, particularly its effect on children.  Studies have shown that even lower levels of lead exposure in children may result in reduced neurobehavioral functioning, with symptoms ranging from neuropsychological deficits that interfere with classroom performance, lower IQ, decreased verbal processing and attention span.[17]

26.     Lead can also cross the fetal barrier during pregnancy, exposing the developing fetus and mother to risks in the form of reduced growth and premature birth.[18]

---

[13] *Heavy metals in food crops: Health risks, fate, mechanisms, and management*, SCIENCEDIRECT, https://www.sciencedirect.com/science/article/pii/S0160412018327971 (last visited January 12, 2023).
[14] *Lead and Lead Compounds*, CALIFORNIA OFFICE OF ENVIRONMENTAL HEALTH HAZARD ASSESSMENT, https://oehha.ca.gov/proposition-65/chemicals/lead-and-lead-compounds (last visited January 12, 2023).
[15] Cadmium, CALIFORNIA OFFICE OF ENVIRONMENTAL HEALTH HAZARD ASSESSMENT, https://oehha.ca.gov/proposition-65/chemicals/cadmium (last visited January 12, 2023).
[16] *See* Cal. Health & Safety Code § 25249.8(b).
[17] Theodore I. Lidsky and Jay S. Schneider, *Lead neurotoxicity in children: basic mechanisms and clinical correlates*, BRAIN, Vol. 126, Issue 1 (Jan. 2003) https://academic.oup.com/brain/article/126/1/5/299373#.Y79duQG8eOc.link (last visited January 12, 2023).
[18] See *Childhood Lead Poisoning Prevention: Pregnant Women,* CENTERS FOR DISEASE CONTROL AND PREVENTION,

27.     More generally, lead may cause anemia, weakness, and kidney and brain damage.[19]  In fact, lead accumulates over time and may affect almost every organ and system in a person's body, leading to toxicity and serious health risks, including inhibited neurological function, anemia, seizures, and, at worst, coma and death.[20]

28.     Adults are also affected by lead toxicity, as the bones can store lead after initial exposure and re-expose the body by releasing the stored lead into the blood stream.[21]

29.     Because the negative effects of lead can be experienced below established limits, "[n]o amount of lead is known to be safe."[22]

30.     Cadmium, a heavy metal like lead, also poses severe safety concerns for consumers.

31.     Like lead, cadmium may cause complications in pregnant women such as fetal growth restriction.[23]

---

https://www.cdc.gov/nceh/lead/prevention/pregnant.htm (last visited January 12, 2023).

[19] *The National Institute for Occupational Safety and Health (NIOSH): Lead*, CENTERS FOR DISEASE CONTROL AND PREVENTION, https://www.cdc.gov/niosh/topics/lead/health.html (January 12, 2023).

[20] *Id.*

[21] See *Lead Exposure in Adults: A Guide for Health Care Providers,* STATE OF NEW YORK DEPARTMENT OF HEALTH, https://www.health.ny.gov/publications/2584.pdf (last visited January 12, 2023).

[22] Jessica Pupovac, *Lead Levels Below EPA Limits Can Still Impact Your Health,* NPR (Aug. 13, 2016), https://www.npr.org/sections/thetwo-way/2016/08/13/489825051/lead-levels-below-epa-limits-can-still-impact-your-health (last visited Jan. 12, 2023).

[23] Hui-Xia Geng et al, *Cadmium: Toxic Effects on Placental And Embryonic Development*, NIH: NATIONAL LIBRARY OF MEDICINE (Feb. 15, 2019) https://pubmed.ncbi.nlm.nih.gov/30797179/ (last visited Jan. 12, 2023)

CLASS ACTION COMPLAINT

32.    The World Health Organization classified cadmium as a Group 1 carcinogen in 2012,[24] and its exposure is known to cause a variety of cancers.[25]  The US Center for Disease Control concurs with the World Health Organization and similarly considers cadmium to be "a cancer-causing agent."[26]

33.    When eaten, large amounts of cadmium can severely irritate the stomach and cause vomiting and diarrhea.[27]  Even at low exposure levels, cadmium can build up in the kidneys and cause kidney disease and fragile bones.[28]

34.    Consumers lack the meaningful ability to test or independently discover whether a product contains unhealthy substances such as lead, cadmium, or other unsafe substances, especially at the point of sale. The testing necessary to discover many unhealthy substances, including cadmium and lead, requires expensive and destructive scientific testing. Given the relatively low price of the Affected Products, no reasonable consumer would engage in such testing before purchasing the Affected Products.

35.    Consumers must, instead, rely on Defendant to truthfully represent what its Affected Products contain on its packaging and labels.

---

[24] *IARC Monographs on the Identification of Carcinogenic Hazards to Humans: List of Classifications*, INTERNATIONAL AGENCY FOR RESEARCH ON CANCER – WORLD HEALTH ORGANIZATION, https://monographs.iarc.who.int/list-of-classifications (last visited Jan. 12, 2023).

[25] *Cancer Trends Progress Report: Cadmium*, NATIONAL CANCER INSTITUTE – NIH, https://progressreport.cancer.gov/prevention/cadmium#:~:text=Cadmium%20and%20its%20compounds%20are,the%20breast%20and%20urinary%20bladder. (last visited Jan. 12, 2023).

[26] *National Biomonitoring Program: Cadmium Factsheet*, CENTERS FOR DISEASE CONTROL AND PREVENTION, https://www.cdc.gov/biomonitoring/Cadmium_FactSheet.html (last visited January 12, 2023).

[27] *Id.*

[28] *Id.*

CLASS ACTION COMPLAINT

36.     However, public reports and articles recently revealed that Defendant's Affected Products contain lead and cadmium. The level of cadmium observed exceeded the MADL set by California; posing serious health risks. Despite these risks, Defendant failed to include any disclosures regarding lead and cadmium levels on its Affected Products.

37.     Defendant knew or should have known of the lead and cadmium in the Affected Products. In 2016, Mars (as well as other manufacturers and distributors) received notice that at least some of its dark chocolate products, including Defendant's products, contained excessive cadmium and lead.[29] This notice came in the form of Proposition 65 Violation Notices which confirmed the presence of heavy metals in the Mars products.[30]   In the intervening 6 years, Mars has not remedied the issue, failing to warn consumers that the Affected Products would expose consumers to cadmium and lead when eaten.

38.     Researchers have found that heavy metals were "typically found naturally in the outer shell of the cocoa bean, not in the bean itself."[31]   The beans were measured soon after being picked and removed from pods, showing low levels of cadmium and lead, but, as the beans dried, the levels increased.[32]   Consumer Reports and its researches concluded that "[d]uring that time, lead-filled dust and

---

[29] Bridget Huber, *Warning Sounded on Heavy Metals in Chocolates*, FLORIDA CENTER FOR INVESTIGATIVE REPORTING (Feb. 11, 2015) https://fcir.org/2015/02/11/warning-sounded-on-heavy-metals-in-chocolates/ (last visited Jan. 12, 2023).
[30] *Id.*
[31] Kevin Loria, *Lead And Cadmium Could Be In Your Dark Chocolate*, CONSUMER REPORTS (Dec. 15, 2022) https://www.consumerreports.org/health/food-safety/lead-and-cadmium-in-dark-chocolate-a8480295550/ (last visited Jan. 12, 2023).
[32] *Id.*

CLASS ACTION COMPLAINT

dirt accumulated on the beans."[33]  Thus, on information and belief, Mars itself is responsible for lead being present in the Affected Products.

39.    Additionally, Defendant has a responsibility to implement controls to significantly minimize or prevent unnecessary consumer exposure to the Heavy Metals in the Affected Products.  Mars prides itself on founding its own Global Food Safety Center, and touts possessing equipment which may have detected the cadmium and lead at issue here.[34]

40.    Accordingly, Defendant is in the best position to test the Affected products for lead and cadmium levels.

41.    Defendant knew that the Affected Products contain Heavy Metals, and failed to provide any warning on packaging or labels, that the Affected Products contain, or risk containing, lead and cadmium.

42.    In making their purchasing decisions, consumers, such as Plaintiffs and the Class Members, are influenced by the ingredients listed, as well as any warnings (or lack thereof) on the packaging of food they purchase. If Defendant had not failed to disclose that the Affected Products were not safe for consumption, then Plaintiffs and the Class would not have paid a premium for the Affected Products (or purchased them at all).

43.    Plaintiffs and the Class reasonably relied on the marketing, labeling, and information provided by Defendant in making purchasing decisions. By representing that the Affected Products contain only the ingredients listed on the Affected Products' labeling, and not disclosing the presence of the Heavy Metals, Defendant misled reasonable consumers, including Plaintiffs and the Class.

---

[33] *Id.*

[34] *Building International Collaboration Mechanisms to Focus on Global Food Safety*, Mars Global Food Safety Center (Apr. 9, 2021) https://gfsc.mars.com/home-page-foodintegrity-capability-building/building-international-collaboration-mechanisms-focus (last visited Jan. 12, 2023).

44. Defendant's false, misleading, and deceptive misrepresentations and omissions are likely to continue to deceive and mislead reasonable consumers and the general public, as they have already deceived and misled Plaintiffs and the Class Members.

45. Plaintiffs would not have purchased the Affected Products, or would have paid less for them, had the Affected Products been truthfully and accurately labeled.

## CLASS ALLEGATIONS

46. Plaintiffs brings their claims for relief pursuant to the Federal Rules of Civil Procedure 23(a), 23(b)(2), or 23(b)(3) on behalf of the following Class (collectively "the Class"):

> All consumers who purchased one or more of the Affected Products in the United States within the applicable limitations period (the "Nationwide Class").

47. Plaintiff Cooper brings this class action individually and on behalf of the following California subclass:

> All consumers who purchased one or more of the Affected Products in the state of California within the applicable limitations period (the "California Subclass").

48. Plaintiff Horton brings this class action individually and on behalf of the following Ohio subclass:

> All consumers who purchased one or more of the Affected Products in the state of Ohio within the applicable limitations period (the "Ohio Subclass").

49. Excluded from the Class is governmental entities, Defendants, any entity in which Defendant has a controlling interest, and Defendant's officers, directors, affiliates, legal representatives, employees, co-conspirators, successors, subsidiaries, and assigns, as well as any judge, justice, or judicial officer presiding over this matter and the members of their immediate families and judicial staff.

CLASS ACTION COMPLAINT

50.     The Nationwide Class, California Subclass, and Ohio Subclass shall be referred to collectively throughout the Complaint as the Class.

51.     The Nationwide Class, California Subclass and Ohio Subclass are properly brought and should be maintained as class actions under Rule 23(a), satisfying the class action prerequisites of numerosity, commonality, typicality, and adequacy because:

52.     Numerosity: Class Members are so numerous that joinder of all members is impracticable. Plaintiffs believes that there are thousands of consumers in the Class who have been damaged by Defendant's deceptive and misleading practices.

53.     Commonality: The questions of law and fact common to the Class Members which predominate over any questions which may affect individual Class Members include, but are not limited to:

   a.   Whether Defendant's marketing, advertising, packing, and labeling for the Affected Products was false, misleading, and/or deceptive;

   b.   Whether Defendant is responsible for the conduct alleged herein which was uniformly directed at all consumers who purchased its Affected Products;

   c.   Whether the Affected Products contain unsafe levels of lead and cadmium;

   d.   Whether Defendant breached the implied warranty of merchantability relating to the Affected Products;

   e.   Whether Defendant's misconduct set forth in this Complaint demonstrates that Defendant has engaged in unfair, fraudulent, or unlawful business practices with respect to the advertising, marketing, and sale of the Affected Products;

f.  Whether Defendant's false and misleading statement concerning the Affected Products were likely to deceive the public; and

g.  Whether Plaintiffs and the Class are entitled to money damages under the same causes of action as the other Class Members.

54.  **Typicality:** Plaintiffs' claims are typical of the claims of the Class because Plaintiffs, like all other Class Members, purchased the Affected Products, suffered damages as a result of that purchase, and seek the same relief as the proposed Class Members.

55.  **Adequacy:** Plaintiffs adequately represent the Class because their interests do not conflict with the interests of the members of the Class, and they have retained counsel competent and experienced in complex class action and consumer litigation. Plaintiffs and their counsel will fairly and adequately protect the interest of the members of the Class.

56.  **Predominance:** Pursuant to Rule 23(b)(3), the common issues of law and fact identified above predominate over any other questions affecting only individual members of the Class. The Class issues fully predominate over any individual issue because no inquiry into individual conduct is necessary; all that is required is a narrow focus on Defendant's deceptive and misleading marketing and labeling practices.

57.  **Superiority:** A class action is superior to other available means of adjudication for this controversy. It would be impracticable for members of the Class to individually litigate their own claims against Defendant because the damages suffered by Plaintiffs and the members of the Class are relatively small compared to the cost of individually litigating their claims. Individual litigation would create the potential for inconsistent judgments and delay and expenses to the court system. A class action provides an efficient means for adjudication with fewer management difficulties and comprehensive supervision by a single court.

CLASS ACTION COMPLAINT

58.    Accordingly, this Class is properly brought and should be maintained as a class action under Rule 23(b)(3) because questions of law or fact common to Class Members predominate over any questions affecting only individual members, and because a class action is superior to other available methods for fairly and efficiently adjudicating this controversy.

## CAUSES OF ACTION

## COUNT I

**VIOLATION OF CALIFORNIA UNFAIR COMPETITION LAW ("UCL")**
**Cal. Bus. & Prof. Code §§ 17200 *et seq.***
**(On Behalf of Plaintiff Cooper and California Subclass Members)**

59.    Plaintiff Cooper repeats, re-alleges, and incorporates each and every factual allegation contained in all previous paragraphs as if fully set forth herein.

60.    The UCL prohibits acts of "unfair competition," including any "unlawful, unfair or fraudulent business act or practice."

61.    By violating state consumer protection statutes, Defendant has violated the UCL's "unlawful prong," as described herein.

62.    Defendant's failure to disclose the presence of the Heavy Metals in the Affected Products is unlawful and violates California's Consumers Legal Remedies Act[35] and False Advertising Law.[36]

63.    By marketing and packaging the Affected Products with no mention of Heavy Metals, Defendant violates the unfair prong of the UCL because such conduct was: (i) immoral, unethical, unscrupulous, and oppressive; (ii) caused harm to members of the California Subclass who purchased the Affected Products; and (iii) violated established public policy against deceptive conduct by businesses. Defendant's justifications or reasons for, or the utility or benefit (if any) of Defendant's misconduct, were substantially outweighed by the substantial

---

[35] Cal. Civ. Code §§ 1750 *et seq.*
[36] Cal. Bus. & Prof. Code §§ 17500 *et seq.*

16
CLASS ACTION COMPLAINT

economic harm that such misconduct caused members of the California Subclass. Finally, the harm caused by Defendant's misconduct is not one that members of the California Subclass could have reasonably avoided given Defendant's exclusive knowledge of and control over its testing practices, quality assurance programs, and marketing.

64.    Defendant also violated the fraudulent prong of the UCL by failing to disclose the presence of the Heavy Metals in the Affected Products, which was likely to deceive the public.

65.    As a result of Defendant's UCL violations, as described above, Plaintiff Cooper and other members of the California Subclass have suffered injury, including, but not limited to, paying for products that they would not have otherwise purchased on the same terms had they known the products contained unsafe levels of Heavy Metals.

66.    Plaintiff Cooper and the California Subclass members would have considered it important to their decisions to purchase the products to know that they were purchasing food products that would be exposing them to unsafe levels of Heavy Metals.

67.    Because of Mars' UCL violations described above, Plaintiff Cooper and the California Subclass suffered injury, and lost money, by paying for the Affected Products that they would not have purchased on the same terms, if at all, had they known the Affected Products contain the Heavy Metals.

68.    Pursuant to Cal. Bus. & Prof. Code § 17203, Plaintiff Cooper and the California Subclass are entitled to: a) an Order requiring Defendant to cease the acts of unfair competition alleged herein; b) full restitution of all monies paid to Defendant as a result of its deceptive practices; c) interest at the highest rate allowable by law; and d) an award of attorneys' fees and costs.

## COUNT II

### VIOLATION OF CALIFORNIA FALSE ADVERTISING LAW
#### Cal. Bus. & Prof. Code §§ 17500 *et seq.*
#### (On Behalf of Plaintiff Cooper and the California Subclass Members)

69.     Plaintiff Cooper repeats and re-alleges each and every factual allegation contained in all previous paragraphs as if fully set forth herein.

70.      California's False Advertising Law prohibits untrue or misleading statements or omissions in connection with the sale of goods.[37]

71.     Defendant's failure to adequately disclose the presence of lead and cadmium in the Affected Products, as set forth herein, is likely to deceive the public.

72.     Defendant knew, or should have known, that the Affected Products contained cadmium and lead and had a duty to disclose their presence to consumers.

73.     By failing to alert consumers to the presence of the Heavy Metals, Defendant misled consumers.  Defendant knew, or should have known, that its omissions would result in misleading reasonable consumers.

74.     Defendant continues to omit the presence of the Heavy Metals from its representations and labeling concerning the Affected Products.   Prospective injunctive relief is necessary to cure Defendant's conduct, especially as Plaintiff Cooper wishes to purchase the Affected products in the future, assuming Defendant can assure her that it will not contain unsfe levels of Heavy Metals in the future.

75.     Plaintiff Cooper and the California Subclass Members are entitled to injunctive and equitable relief, and restitution in the form of a full refund for the amount spent on the Affected Products.

---

[37] Cal. Bus. & Prof. Code § 17500

## COUNT III

**VIOLATION OF CALIFORNIA CLRA**
**Cal. Civ. Code §§ 1750 *et seq.***
**(On Behalf of Plaintiff Cooper and the California Subclass Members)**

76.    Plaintiff repeats and re-alleges each and every factual allegation contained in all previous paragraphs as if fully set forth herein.

77.    The Affected Products are "goods" as defined by Cal. Civ. Code § 1761(a).

78.    Defendant is a "person" as defined by Cal. Civ. Code § 1761(c).

79.    Plaintiff Cooper and the California Subclass qualify as "consumers" pursuant to California Civ. Code § 1761(d).

80.    Plaintiff Cooper's and the California Subclass's purchases of the Affected Products qualify as "transactions," as defined by Cal. Civ. Code § 1761(e).

81.    Defendant's conduct violated by the CLRA by: a) failing to disclose presence of  Heavy Metals on the Affected Products' packaging;[38] b) knowingly, recklessly, and/or intentionally representing that the Affected Products were of a particular standard, quality, or grade, when they were of another;[39] and c) knowingly, recklessly, and/or intentionally advertising the Affected Products with the intent not to sell them as advertised.[40]

82.    Defendant's omissions were material to reasonable consumers, including Plaintiff Cooper and California Subclass, as they would have considered the presence of Heavy Metals in their food as an important point of information when determining whether to purchase the Affected Products.

83.    Defendant had a duty to disclose the presence of Heavy Metals in the Affected Products because Defendant had exclusive knowledge as to the levels of

---

[38] Cal. Civ. Code § 1770(a)(5).
[39] Cal. Civ. Code § 1770(a)(7).
[40] Cal. Civ. Code § 1770(a)(9).

Heavy Metals in the Affected Products, which was not reasonably accessible to Plaintiff Cooper and the California Subclass, and Defendant concealed the presence and high levels of cadmium and lead in the Affected Products from Plaintiff Cooper and the California Subclass.

84.   Plaintiff Cooper and California Subclass relied on Defendant's representations and packaging as to the quality and ingredients of the Affected Products.

85.   Plaintiff Cooper and the California Subclass were harmed, and will continue to be harmed, as a direct and proximate result of Defendant's violations unless Defendant is prevented from continuing to use misleading labeling and marketing as set forth herein in connection with advertising, distribution, and sale of the Affected Products.

86.   Accordingly, Plaintiff Cooper, on behalf of herself and all other members of the California Subclass, seeks injunctive relief.

87.   On January 25, 2023, Defendant was served with a pre-suit notice letter pursuant to CLRA § 1782.  The letter was sent certified mail, return receipt requested, and provided notice of Defendant's violation of the CLRA and demands that Defendant correct the unlawful, unfair, false and/or deceptive practices alleged here. If Defendant does not fully correct the problem for Plaintiffs and for each member of the California Subclass within 30 days after service of Plaintiffs' notice letter, Plaintiff Cooper and the California subclass will amend their complaint to seek all monetary relief allowed under the CLRA.

## COUNT IV

### VIOLATION OF OHIO'S CONSUMER SALES PROTECTION ACT
**Ohio Revised Code §§ 1345.01 et seq.**
**(On Behalf of Plaintiff Horton and the Ohio Subclass Members)**

88.   Plaintiff Horton repeats and re-alleges each and every factual allegation contained in all previous paragraphs as if fully set forth herein.

89.   Plaintiff Horton brings this claim individually and on behalf of the Ohio Subclass members.

90.   Plaintiff Horton and the Ohio Subclass members are "consumers," as defined by ORC Ann. § 1345.01(D).

91.   At all times mentioned herein, Defendant engaged in a "consumer transaction" in Ohio, as defined in OR.C. § 1345.01(A).

92.   Defendant has committed and continues to commit unfair and deceptive acts or practices in connection with a consumer transaction in violation of the Ohio Consumer Sales Practices Act, R.C. § 1345.01, *et seq.*, (the "OCSPA"), namely the sale of the Affected Products to consumers in Ohio while making false and misleading statements and omissions concerning the presence of the Heavy Metals in the Affected Products.

93.   Defendant has unfairly and deceptively omitted and concealed material information related to the Affected Products from consumers in violation of the OCSPA.

94.   Defendant's unfair and deceptive practices deceived Plaintiff Horton and the Ohio Subclass and deceived a substantial segment of the target audience.

95.   Defendant's unfair and deceptive practices were material as it influenced purchasing and payment decisions.

96.   Plaintiff Horton and the Ohio Subclass have been damaged as a direct and proximate result of Defendant's deceptive and unfair practices.

97.   Defendant's conduct outlined herein violates the OCSPA.

98.   Plaintiff Horton and the Ohio Subclass are entitled to recover compensatory damages, plus interest, attorneys' fees, and costs.

99.   Defendant's conduct was intentional, willful, wanton, malicious, and egregious, entitling Plaintiff Horton and members of the Ohio Subclass to punitive damages and attorneys' fees in an amount to be determined at trial.

## COUNT V

**BREACH OF IMPLIED WARRANTY**
**(On Behalf of Plaintiffs and All Class Members)**

100.    Plaintiffs repeat and reallege each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

101.    Defendant manufactured, marketed, labeled, distributed, and sold the Affected Products, as part of its overall business.

102.    The Affected Products are considered a "good" under the relevant laws.

103.    For goods to be merchantable under UCC section 2-314, it must (a) pass without objection in the trade under the contract description; (b) in the case of fungible goods, are of fair average quality within the description; (c) are fit for the ordinary purposes for which such goods are used; and (d) run, within the variations permitted by the agreement, of even kind, quality and quantity within each unit and among all units involved.

104.    Defendant breached the implied warranty of merchantability. The Affected Products, meant to be ingested, should not contain unsafe levels of Heavy Metals.

105.    Defendant is on notice of its breach.  In addition to widespread media reports, upon information and belief and based on representations made by Mars, the Company is or should have been aware through its own product testing and records. In addition, on January 25, 2023, Plaintiffs served Defendant with a pre-suit notice letter.

106.    The Affected Product contained lead and cadmium, in amounts that were dangerous to be consumed.  Plaintiffs and each of the members of the Class were injured as a result. Defendant thereby breached the following state warranty laws:

a. Code of Ala. § 7-2-314;

b. Alaska Stat. § 45.02.314;

c. A.R.S. § 47-2314;

d. A.C.A. § 4-2-314;

e. Cal. Comm. Code § 2314;

f. Colo. Rev. Stat. § 4-2-314;

g. Conn. Gen. Stat. § 42a-2-314;

h. 6 Del. C. § 2-314;

i. D.C. Code § 28:2-314;

j. Fla. Stat. § 672.314;

k. O.C.G.A. § 11-2-314;

l. H.R.S. § 490:2-314;

m. Idaho Code § 28-2-314;

n. 810 I.L.C.S. 5/2-314;

o. Ind. Code § 26-1-2-314;

p. Iowa Code § 554.2314;

q. K.S.A. § 84-2-314;

r. K.R.S. § 355.2-313;

s. 11 M.R.S. § 2-314;

t. Md. Commercial Law Code Ann. § 2-314;

u. 106 Mass. Gen. Laws Ann. § 2-314;

v. M.C.L.S. § 440.2314;

w. Minn. Stat. § 336.2-314;

x. Miss. Code Ann. § 75-2-314;

y. R.S. Mo. § 400.2-314;

z. Mont. Code Anno. § 30-2-314;

aa. Neb. Rev. Stat. § 2-314;

|      |     |                                       |
|------|-----|---------------------------------------|
| 1    | bb. | Nev. Rev. Stat. Ann. § 104.2314;     |
| 2    | cc. | R.S.A. 382-A:2-314;                   |
| 3    | dd. | N.J. Stat. Ann. § 12A:2-314;          |
| 4    | ee. | N.M. Stat. Ann. § 55-2-314;           |
| 5    | ff. | N.Y. U.C.C. Law § 2-314;              |
| 6    | gg. | N.C. Gen. Stat. § 25-2-314;           |
| 7    | hh. | N.D. Cent. Code § 41-02-31;           |
| 8    | ii. | II. O.R.C. Ann. § 1302.27;            |
| 9    | jj. | 12A Okl. St. § 2-314;                 |
| 10   | kk. | Or. Rev. Stat. § 72-3140;             |
| 11   | ll. | 13 Pa. Rev. Stat. § 72-3140;          |
| 12   | mm. | R.I. Gen. Laws § 6A-2-314;            |
| 13   | nn. | S.C. Code Ann. § 36-2-314;            |
| 14   | oo. | S.D. Codified Laws, § 57A-2-314;      |
| 15   | pp. | Tenn. Code Ann. § 47-2-314;           |
| 16   | qq. | Tex. Bus. & Com. Code § 2.314;        |
| 17   | rr. | Utah Code Ann. § 70A-2-314;           |
| 18   | ss. | 9A V.S.A. § 2-314;                    |
| 19   | tt. | Va. Code Ann. § 8.2-314;              |
| 20   | uu. | Wash. Rev. Code Ann. § 6A.2-314;      |
| 21   | vv. | W. Va. Code § 46-2-314;               |
| 22   | ww. | Wis. Stat. § 402.314; and             |
| 23   | xx. | Wyo. Stat. § 34.1-2-314.              |

107. As a direct and proximate result of Defendant's breach of the express warranty, Plaintiffs and Class Members were damaged in the amount of the price they paid for the Affected Products.

## COUNT VI

### UNJUST ENRICHMENT
**(On Behalf of Plaintiffs and All Class Members in the Alternative)**

108.   Plaintiffs repeat and reallege each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

109.   Plaintiffs bring this claim individually and on behalf of the members of the proposed Nationwide Class against Defendant.

110.   Plaintiffs and members of the Class conferred benefits on Defendant by purchasing the Affected Products.

111.   Defendant has been unjustly enriched in retaining the revenues derived from Plaintiffs' and Class members' purchases of the Affected Products.

112.   Retention of those moneys under these circumstances is unjust and inequitable because Defendant has engaged, and continues to engage, in a systematic campaign of representing that the Affected Products do not contain the Heavy Metals, concealing and omitting material facts regarding the true nature of the Affected Products.  These false representations and omissions caused injuries to Plaintiffs and members of the Class because they would not have purchased the Affected Products, if at all, if they knew that the Affected Products contained high levels of Heavy Metals.

113.   Because Defendant's retention of the non-gratuitous benefits conferred on them by Plaintiffs and members of the Class is unjust and inequitable, Defendant must pay restitution to Plaintiff and members of the Class for its unjust enrichment, as ordered by the Court.

### PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs, individually and on behalf of all other similarly situated, seek judgment against the Defendant as follows:

(a)     For an order determining that this action is properly brought as a class action and certifying Plaintiffs as the representatives of the Class and their counsel as Class Counsel;

(b)     For an order declaring the Defendant's conduct violates the laws referenced herein;

(c)     For an order finding in favor of Plaintiffs and the Class on all counts asserted herein;

(d)     For damages in amounts to be determined by the Court and/or jury;

(e)     An award of statutory damages or penalties to the extent available;

(f)     For pre-judgment interest on all amounts awarded;

(g)     For an order of restitution and all other forms of monetary relief; and

(h)     Such other and further relief as the Court deems necessary and appropriate.

## <u>DEMAND FOR TRIAL BY JURY</u>

Plaintiffs demand a trial by jury on all issues so triable.

Dated: January 25, 2023          Respectfully submitted,

By: */s/ Adam M. Apton*
Adam M. Apton (SBN 316506)
**LEVI & KORSINSKY LLP**
445 South Figueroa Street
Los Angeles, CA 90071
Telephone: (213) 985-7290
Facsimile: (212) 363-7171
Email: aapton@zlk.com

Mark S. Reich*
Courtney E. Maccarone*
**LEVI & KORSINSKY, LLP**
55 Broadway, 10th Floor
New York, NY 10006
Telephone: (212) 363-7500
Facsimile: (212) 363-7171
Email: mreich@zlk.com
Email: cmaccarone@zlk.com

*Attorneys for Plaintiffs*

**pro hac vice* forthcoming

26
CLASS ACTION COMPLAINT